## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

GLENDA S. IMHOFF,        )
                           )
       Plaintiff,        )
                           )
       v.                  )          No. 4:11-1066-DGK-SSA
                           )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,  )
                           )
       Defendant.      )

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Glenda Imhoff seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and application for supplemental security income (SSI) based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq.* Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Imhoff contends she is disabled due to low back pain, nerve pain in her legs, and fibromyalgia. The Administrative Law Judge ("ALJ") denied Imhoff's applications, finding that while she suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform a range of sedentary work. After carefully reviewing the record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

### Factual and Procedural Background

A summary of the medical record is presented in the parties' briefs and is repeated only to the extent necessary.

Imhoff was last insured for Title II disability insurance benefits, and so potentially eligible to receive such benefits, on September 30, 2008. Imhoff previously filed a number of applications for disability insurance benefits under Title II, all of which were denied. Among these, the most relevant is her November 21, 2008 application which the Commissioner denied on February 26, 2009. She did not pursue this application further and so that determination stands as the Commissioner's final decision.

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law and whether the findings of fact are supported

by substantial evidence on the record as a whole. In determining whether a claimant is disabled, the Commissioner follows a five-step evaluation process.[1]

Imhoff argues the ALJ erred by (1) failing to consider all of the medical evidence; (2) discounting the opinion of her treating physician, Janet Hankins, M.D.; (3) characterizing her activities of daily living as refuting her disability claim; and (4) incorrectly determining her RFC. The Court finds no merit to these arguments.

## I. Imhoff's application for Title II benefits is barred by res judicata.

At the outset, the Court holds Imhoff's present application for Title II benefits is barred by the doctrine of res judicata because she was last insured for such benefits on September 30, 2008, and her November 21, 2008 application, which should have covered the period through September 30, 2008, was denied on February 26, 2009. *See Brown v. Sullivan*, 932 F.2d 1243, 1247 (8th Cir. 1991); *Lowrey v. Astrue*, No. 4:06-CV-01546, 2008 WL 320736, at *2 (E.D. Mo. Feb. 4, 2008) (holding res judicata is appropriately applied where a claimant advances a claim in a subsequent proceeding that was decided in a previous proceeding).

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

**II.    The ALJ did not err in denying Imhoff's application for Title XVI benefits.**

**A.    The objective medical evidence supports the ALJ's credibility finding.**

Plaintiff first argues the ALJ failed to conduct an "in depth" analysis of the medical records in this case. Imhoff contends the ALJ erred in discounting her reports of disabling pain and in finding that her medication was "relatively effective" in controlling her symptoms.

The objective medical evidence here supports the ALJ's determination that Imhoff's ability to work was not as limited as she alleged. R. at 26-29. For example, the ALJ noted that an x-ray of her left knee taken in April 2009 showed some soft tissue swelling, but no fracture or dislocation. R. at 27, 1026. The ALJ also considered an x-ray of the lumbar spine taken April 10, 2009 which was unremarkable: It showed no evidence of fracture or disc space narrowing, that the spinous processes were in alignment, and that there was no spondylolisthesis. R. at 27, 1029, 1061. The ALJ noted that the most recent physical examination in April 2011 revealed no scoliosis of the cervical, thoracic or lumbar spine, and no paravertebral muscle tenderness. R. at 27, 1085. Imhoff had good muscle tone and muscle strength in the upper and lower extremities; her cerebellar examination was normal; her patellar reflexes were normal; and her station and gait were normal. *Id.* Because it is the ALJ's duty to assess the credibility of the claimant's subjective complaints, and "questions of fact, including the credibility of a plaintiff's subjective testimony, are primarily for the [ALJ] to decide, not the court," the Court does not find the ALJ erred here. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987).

With respect to her pain medication, although Imhoff notes she has taken a variety of pain medications and long-term use has caused some unpleasant side effects, there is still ample evidence in the record supporting the ALJ's observation that the medication has been "relatively effective" in controlling her symptoms. For example, the ALJ noted that on August 25, 2009, Imhoff reported that her pain medication was working. R. at 25. Although a claimant's subjective complaints cannot

4

be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011).

### B. The ALJ did not err in discounting Dr. Hankins' opinion.

The Court also holds that the ALJ did not err in discounting the opinion of Plaintiff's treating physician, Dr. Janet Hankins, M.D. Although a treating physician's opinion concerning an applicant's functional limitations is generally entitled to substantial weight, "[a] treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal quotation omitted). The ALJ may discount a treating physician's opinion that is inconsistent with other substantial evidence in the record. *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004); *see also* SSR 96-2p (stating that controlling weight may be given only in appropriate circumstances and may not be given unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record).

In the present case, Dr. Hankins opined that Imhoff was disabled from her fibromyalgia, knee pain, and back problems. R. at 786-88. The ALJ found this opinion unpersuasive in part because it was inconsistent with the relatively mild objective medical evidence, as discussed above, and because it relied heavily on Imhoff's self-reported symptoms which were not credible. The ALJ also listed several examples of discrepancies between Plaintiff's subjective complaints, the medical record, and Dr. Hankins opinion. R. at 28-29. Since Dr. Hankins opinion was based largely on Plaintiff's subjective complaints, the ALJ was entitled to give it less weight. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). Accordingly, the ALJ did not err in making this determination.

**C.     The ALJ did not err in analyzing Plaintiff's activities of daily living.**

Plaintiff also contends that the ALJ erred in finding that her activities of daily living "disprove disability."  She contends the ALJ based this fact almost solely on the fact that she has a three-year-old granddaughter living with her.

The ALJ, however, did not find that Imhoff's activities of daily living "disprove disability," rather he determined that they showed she was "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," and thus she was not completely credible.  R. at 27.  The AL's reasoning was as follows:

> In March 2011, the claimant told Dr. Pulcher that she is raising her 3 year-old grandchild and plans to adopt her, "when she gets the money."  She also reported that she takes care of her own personal living affairs.  The undersigned notes [that caring for young children at home] can be quite demanding both physically and emotionally.  At her hearing, the claimant described daily activities which are fairly limited; however it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons in view of the relatively weak medical evidence and other factors discussed in this decision.  Overall, the claimant's reported limited daily activities at the hearing are considered to be outweighed by the other factors discussed in this decision.

The ALJ also noted that despite claiming severe memory problems, Imhoff reported no problems reading books, watching television, or handling money, and that she did not need any reminders to take her medications.  R. at 27-28.

After carefully reviewing the record, the Court finds the ALJ's conclusion is supported by substantial evidence, and so the Court cannot overturn it.  *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (holding ALJ did not err in discounting claimant's credibility in part because she ceased employment at the same time she became her granddaughter's primary caregiver); *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (holding activities which are inconsistent with a claimant's assertion of disability impugn the claimant's credibility).

**D.      The ALJ properly determined Plaintiff's RFC.**

Finally, Imhoff claims the ALJ failed to consider all of her impairments in determining her RFC and in questioning the vocational expert ("VE"). The Court holds the ALJ's RFC determination and the hypothetical question posed to the VE are supported by the record.

An ALJ's RFC determination must be based on all of the evidence of record. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); *see also* 20 C.F.R. § 416.945; SSR 96-8p. It is not based only on "medical" evidence, i.e., evidence from medical reports or sources, it is based on all the relevant, credible evidence of record. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

In formulating an RFC, "the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect" the claimant's ability to perform exertional tasks. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). Before the ALJ can determine an applicant's RFC, he or she must assess the credibility of the claimant's subjective complaints. "[Q]uestions of fact, including the credibility of a plaintiff's subjective testimony, are primarily for the [ALJ] to decide, not the court." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). The Court is also mindful of Social Security Ruling 96-8p, which requires the ALJ to identify a claimant's functional limitations and then assess the claimant's work-related abilities on a function-by-function basis, including physical, mental, and other limitations. SSR 96-8p.

Here the ALJ found that Imhoff retained the RFC to lift, push, or pull 10 pounds frequently; stand and/or walk for two hours out of an eight hour work day; sit for up to six hours in an eight hour work day; occasionally climb, balance, stoop, kneel, crouch and crawl; occasionally reach overhead; and occasionally use her arms for rapid and repetitive maneuvers. R. at 24. The ALJ also found, however, that her work ability was limited because she could not climb ladders, ropes, or scaffolds; could not be exposed to temperature extremes, vibration, or

7

work hazards; and was limited to simple, unskilled work with no contact with the general public. *Id.*

Substantial evidence on the record supports these findings. The relatively mild objective medical evidence discussed above supports the ALJ's findings concerning her physical impairments, and Dr. Robert Pulcher's, Ph.D. GAF assessment and opinion of Plaintiff's mental abilities supports the ALJ's assessment of her mental abilities. R. at 920-22. In fact, Dr. Pulcher opined that Imhoff had essentially no significant mental limitations; and the ALJ actually gave her the benefit of the doubt by finding she had a few mental limitations. R. at 24, 920-22.

The Court finds the VE's testimony supported the ALJ's determination that Plaintiff was not disabled. The ALJ asked the VE a hypothetical question that was properly formulated in that it included only Imhoff's credible limitations. R. at 71-72. In response, the VE testified that the individual would be able to perform the requirements of representative occupations such as a document preparer, a sedentary unskilled position with approximately 800 jobs in the state of Missouri and 30,000 jobs in the national economy; a final assembler, a sedentary unskilled position, with approximately 400 jobs in the state of Missouri and 20,000 jobs in the national economy; and a hand packager, a sedentary unskilled position, with approximately 1,000 jobs in the state of Missouri and 50,000 jobs in the national economy. R. at 30-31, 71-73.

Although a hypothetical question posed to a VE must set forth with reasonable precision the claimant's impairments, it need only include those impairments and limitations the ALJ finds are substantially supported by the record as a whole. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). Discredited subjective complaints are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them. *See Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). Because the hypothetical question included those impairments the ALJ found credible and

excluded those the ALJ discredited for legally sufficient reasons, the VE's testimony is substantial evidence supporting the ALJ's determination. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  January 2, 2013           /s/ Greg Kays
                                 GREG KAYS, JUDGE
                                 UNITED STATES DISTRICT COURT